UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

HIRAM TRABAL HERNANDEZ,        *
ET AL.,                        *
    Plaintiffs,               *
                               *
       v.                    *        CIV. NO. 98-1233(PG)
                               *
                               *
SEA LAND SERVICES, INC.,       *
ET AL.,                        *
    Defendants.               *

## OPINION AND ORDER

Before the Court are Defendant Sea Land Services' "Motion for Summary Judgment" (Docket No. 41) with the Local Rule 311.12 Statement of Uncontested Material Facts, as well as Plaintiffs' "Opposition to Motion for Summary Judgment" (Docket No. 46). The Plaintiff's Rule 311.12 Statement does not comply with the requirements of the local rules. Defendant requested, and was granted, leave to file a Reply (Docket No. 53). For the reasons stated below, the Defendant's Motion for Summary Judgment is **GRANTED in part, DENIED in part**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Hiram Trabal worked for Defendant as a Maintenance Supervisor. Plaintiff worked with the company for over forty years. (Opp'n Ex. 2). Plaintiff was over sixty years old when he filed the charge with the ADU.

Plaintiff filed an administrative charge with the Commonwealth



Civil No. 98-1233(PG)                                      Page 2

of Puerto Rico's Anti-Discrimination Unit ("ADU") on November 2,

1995. (Defendant's Statement of Material Facts at ¶ 1; Mot. for Summ.

J. Ex. 1.) Therein, the Plaintiff charged that he was the subject of

a hostile work environment created in part by Mr. Carlos Barreto,

Plaintiff's immediate supervisor. (Defendant's Statement of Material

Facts at ¶ 2.) The Court quotes from the official translation of the

charge in extenso:

> I have been working for 38 years as supervisor in the
> [Defendant] company. In 1994, there arrived at the department as
> Maintenance Manager, Mr. Carlos Barreto. Since he arrived he has
> made me a victim of hostile treatment and discrimination. He
> constantly pressures me and there is a rumor that he (Barreto)
> is going to make me retire before time [sic]. Other elderly
> employees are being pressured also or have been dismissed and
> substituted by younger personnel. All this situation is
> affecting my physical and emotional health.
> I request a cease and desist of all discrimination and
> harassment against me. That I and my family be compensated for
> the damages, suffering and mental anguish.

Mot. for Summ. J. Ex. 1.

The charge is signed and dated November 2, 1995. Id. The charge

also lists November 1, 1995 as the day the most recent act of

continuing discrimination took place. Plaintiff was never fired by

Defendant. (Defendant's Statement of Material Facts at ¶ 3.)

Plaintiff alleges that he was forced to resign in what was

essentially a constructive discharge. (Plaintiff's Opposition to

Defendant's Uncontested Facts at ¶ 3.)

Plaintiff argued that, after the arrival of Mr. Barreto, he was

Civil No. 98-1233(PG)                                        Page 3

subjected to various transfers. (Defendant's Statement of Material Facts at ¶ 5; Opp'n Ex. 2.) Defendant alleges, and Plaintiff so stated in his deposition, that these were all lateral transfers. (Defendant's Statement of Material Facts at ¶ 5-6; <u>See also</u> Trabal Dep. at pp. 22-23, 29). Plaintiff also admitted that he liked to work in all divisions of Maintenance Departments equally. (Defendant's Statement of Material Facts at ¶ 7.) Plaintiff, however, argues in the Opposition that Mr. Barreto told him that "... a new 26 year old employee could do the work better, but then reassigned back to the position when the replacement didn't perform as expected." (Opp'n Ex. 2 at ¶ 6.) After Mr. Barreto's position became vacant, he was replaced by Mr. Eduardo Vera, who Plaintiff alleges also engaged in a pattern of transferring Plaintiff. (Opp'n Ex. 2 at ¶ 12.) Plaintiff in his deposition stated that this had been a practice at Sea-Land before Mr. Barreto arrived. (Defendant's Statement of Material Facts at ¶ 8.) Plaintiff also testified in his deposition that he was being transferred for reasons of need in the different divisions. (Defendant's Statement of Material Facts at ¶ 10.)

Plaintiff was offered what he characterized as a 'special assignment' by Mr. Barreto into a new shift. (Defendant's Statement of Material Facts at ¶ 12.) Plaintiff was aware that another employee of Defendant's, Mr. Joe Maqueda, had been offered a special

Civil No. 98-1233(PG)                                          Page 4

assignment and was later fired. (Defendant's Statement of Material

Facts at ¶ 13.) Plaintiff never accepted the special assignment and

never worked the shift that would have corresponded to said special

assignment. (Defendant's Statement of Material Facts at ¶ 15.)

Plaintiff received a disciplinary memorandum from Mr. Barreto

dated October 25, 1995. (Defendant's Statement of Material Facts at

¶ 16; Mot. for Summ. J. Ex. 2.) On January 25, 1996, the Plaintiff

answered the disciplinary memorandum sent by Mr. Barreto.

(Defendant's Statement of Material Facts at ¶ 17; Mot. for Summ. J.

Ex. 6.) In the response letter, as well as in deposition testimony,

the Plaintiff admitted that the three incidents discussed in the

memorandum did occur. (Defendant's Statement of Material Facts at ¶

18.) Plaintiff gave explanations in the letter as to why the

infractions occurred. (Defendant's Statement of Material Facts at ¶

18.) This was the only disciplinary memorandum that Plaintiff ever

received while working for Defendant. (Defendant's Statement of

Material Facts at ¶ 19.)

Plaintiff also stated in his deposition testimony that every

time he was transferred from department to department he received the

worst and/or slowest computer available. (Defendant's Statement of

Material Facts at ¶ 20-21.) Plaintiff admitted that Defendant's

practice was that everyone carried their computer when they were

Civil No. 98-1233(PG)                                    Page 5

transferred. (Defendant's Statement of Material Facts at ¶ 22.) The computers remained at one location while the employees rotated. (Defendant's Statement of Material Facts at ¶ 23-24.) Defendant's policy changed while Plaintiff was still employed there apparently at Plaintiff's request. (Defendant's Statement of Material Facts at ¶ 25.) Plaintiff stated in his deposition testimony that it was his belief that all the actions taken in relation to the computers were motivated by age-based animus. (Defendant's Statement of Material Facts at ¶ 26.) Plaintiff testified that he received a better computer than a younger supervisor. (Defendant's Statement of Material Facts at ¶ 25.)

In November 1995, Plaintiff filed his charge with the ADU. (Defendant's Statement of Material Facts at ¶ 27.) Plaintiff subsequently presented a sworn statement to the ADU in November 1996 alleging that he had been subjected to retaliation for filing the charge. (Defendant's Statement of Material Facts at ¶ 27.) Plaintiff's sole allegation as to the retaliation claim was the failure to promote him to the position of Maintenance Manager on September 1996, ten months after he filed his discrimination charge. (Defendant's Statement of Material Facts at ¶ 30.) Plaintiff submitted his application for the position and was interviewed by Paul Colgan, the Operations Manager. (Defendant's Statement of

Civil No. 98-1233(PG)                                                    Page 6

Material Facts at ¶ 31.) Plaintiff does not know who made the decision to hire Mr. Eduardo Vera for the position of Maintenance Manager. (Defendant's Statement of Material Facts at ¶ 32.) Plaintiff admitted that he did not know Mr. Vera's qualifications for the position of Maintenance Manager. (Defendant's Statement of Material Facts at ¶ 34.) Plaintiff stated in his deposition testimony that he thought the only reason he didn't get the job was age-based animus since he was better qualified. (Defendant's Statement of Material Facts at ¶ 35.) Plaintiff also stated that he believed he was not promoted because he had filed a charge with the ADU. (Defendant's Statement of Material Facts at ¶ 36.)

Plaintiff stated that after Mr. Vera began working as Maintenance Manager, Plaintiff was transferred among the different divisions of the Maintenance department. (Defendant's Statement of Material Facts at ¶ 37.) The first such change came around three months into Mr. Vera's employment with Defendant. Plaintiff was reassigned from Facility to the Power Division. (Defendant's Statement of Material Facts at ¶ 39.) Plaintiff testified that he thought the reason he was reassigned was because his supervisor was having problems in the Power division. (Defendant's Statement of Material Facts at ¶ 39.) Plaintiff was again reassigned from Power to Chassis Division in order to substitute Mr. Frank Rodríguez.

Civil No. 98-1233(PG)                                        Page 7

(Defendant's Statement of Material Facts at ¶ 40.) Plaintiff was

again sent to work in the Facility Division. (Defendant's Statement

of Material Facts at ¶ 42.)

     Plaintiff also stated that Mr. Vera changed his car assignment

while he was working in the Chassis Division. (Defendant's Statement

of Material Facts at ¶ 43.) Plaintiff's car was changed from a Mazda

pick-up to an Isuzu Trooper. (Defendant's Statement of Material Facts

at ¶ 43.) The cars were not intended for personal use and were not to

be taken home. (Defendant's Statement of Material Facts at ¶ 44.)

Plaintiff testified that he had previously been given other cars,

including a previous Isuzu Trooper. (Defendant's Statement of

Material Facts at ¶ 46.) Plaintiff also admitted that the person he

replaced as supervisor in the Chassis Division used an Isuzu Trooper.

(Defendant's Statement of Material Facts at ¶ 47.)

     Plaintiff testified that he received a lower percentage increase

in salary as other Maintenance Supervisors. (Defendant's Statement of

Material Facts at ¶ 48.) Plaintiff was the highest paid supervisor in

Defendant's employ. (Defendant's Statement of Material Facts at ¶

49.)

     Plaintiff went on sick leave as well as short term disability

(receiving 100% of his salary) in 1998. Plaintiff remained away for

eight months and subsequently retired from Defendant's employ.

Civil No. 98-1233(PG)                                               Page 8

(Reply at 4.)

## II. SUMMARY JUDGMENT STANDARD

Summary Judgment is "a means of avoiding full-dress trials in unwinnable cases...." Messnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). Granting summary judgment is appropriate when "there is no issue of material fact and... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). A genuine issue is one that is dispositive and must be resolved at trial because a reasonable jury could resolve in favor of the non-moving party. Arvelo v. American Int'l Ins. Co., 875 F.Supp. 95, 99 (D.P.R. 1995).

While the moving party has the burden of initially establishing that there is an absence of evidence to support the nonmoving party's case," Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1984), the nonmovant has a "corresponding obligation to offer the Court more than steamy rhetoric and bare conclusions." Lawton v. State Mut. Life Assurance Co. of America, 101 F.3d 218, 223 (1st Cir. 1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form, sufficient to limn a trialworthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." Id.

Civil No. 98-1233(PG)                                      Page 9

Local Rule 311.12, moreover, requires the moving party to "file annexed to the [summary judgment] motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried...." Unless the nonmoving party controverts this statement, all material facts set forth therein "shall be deemed to be admitted." Id. This is called the "anti-ferret rule". See e.g., Orbi, S.A. v. Calvesbert & Brown, 20 F.Supp. 2d 289, 291 (D.P.R. 1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road to early dismissal." Tavarez v. Champion Products, Inc., 903 F.Supp. 268, 270 (D.P.R. 1995).

Plaintiff has not complied with Local Rule 311.12 to the extent that Plaintiff's Statement of Contested Facts contains no "...specific reference to the record." D.P.R. LOC. R. 311.12. Plaintiff merely states whether a fact is admitted or contested with no indications as to the factual predicate of the objections and at times, even pointing to evidence that was not made part of Plaintiff's opposition brief. Therefore, Plaintiff deems admitted all the facts plead by Defendant in the Statement of Uncontested Material Facts filed with their Motion for Summary Judgment.

Civil No. 98-1233(PG)                                    Page 10

### III. PLAINTIFFS' CLAIMS

## A. Plaintiff's ADEA claim:

### 1. The Statute of Limitations:

Defendant argues in its Motion for Summary Judgment that the scope of the claims properly before the Court are those claims which occurred after January 9, 1995. In that same vein, the employer requests that the Court dismiss all claims that arise from employment actions that allegedly occurred before that time. (Mot. for Summ. J. Br. at 3-5.) Plaintiff argues that in hostile work environment cases, all factual allegations that constitute part of the hostile work environment claim should be considered, notwithstanding the fact that they occurred 300 days before the charge was filed. (Opp'n Br. at 3.)

A plaintiff must file his administrative charge with the EEOC or local agency within 300 days of the alleged unlawful employment practice. Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275 (1st Cir. 1999). Essentially, any incident or factual scenario that could yield a cause of action is nevertheless time-barred if it occurred more than 300 days before the charge is filed. When a plaintiff claims he was subjected to a hostile work environment, the claim is not based on discrete acts which can be clearly identified. Indeed, the very nature of a hostile work environment claim makes it difficult to identify a beginning and an end to the factual scenario on which it

Civil No. 98-1233(PG)                                    Page 11

is predicated.

The First Circuit had held that a continuing serial violation claim would be time barred "...even where plaintiff alleges a violation within the appropriate statute of limitations period,... if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." <u>Provencher v. CVS Pharmacy</u>, 145 F.3d 5, 14 (1st Cir. 1998). The Supreme Court, however, explicitly rejected the argument that "... acts that occurred outside the statute of limitations [are time-barred] unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct." <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. –, 122 S.Ct. 2061, 2075 (2002). Since the hostile work environment is all one unlawful employment practice under Title VII, "it does not matter that some of the component acts of the hostile work environment fall outside the statutory time period." <u>Id.</u> at 2074. Therefore, Defendant's argument that every alleged discriminatory act that occurred within the hostile work environment was a separate discriminatory act must fail. (Mot. for Summ. J. Br. at 5.) Following the newly established test set forth in <u>Morgan</u>, all of the alleged discriminatory acts that lead to a hostile work environment are admissible since Plaintiff filed a charge with the ADU 300 days before

Civil No. 98-1233(PG)                                         Page 12

the last allegedly discriminatory act took place.

　　2. Hostile Work Environment:

　　The ADEA makes it unlawful for an employer to take adverse

employment action against an employee because of his age. 29 U.S.C.

§ 623(a)(1); Álvarez-Fonseca v. Pepsi-Cola of Puerto Rico, 152 F.3d

17, 24 (1st Cir. 1998). An employer may, however, take any reason-fair

or unfair-so long as the action is not motivated by an age-based

discriminatory animus. Hidalgo v. Overseas Condado Ins. Agency, Inc.,

120 F.3d 328, 337 (1st Cir. 1997). At all times a plaintiff has the

burden of proof as to the age-based discrimination claim. Shorette v.

Rite-Aid of Maine, Inc., 155 F.3d 8, 12 (1st Cir. 1998). To survive

a motion for summary judgment, the plaintiff must adduce direct

evidence of discrimination or present circumstantial or indirect

evidence to make out a prima-facie case of discrimination under the

burden-shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S.

792, 802-05 (1973).

　　Defendant argues that Plaintiff cannot establish a prima facie

case of age discrimination. (Mot. for Summ. J. Br. at 7-13.) In order

to establish a prima facie case of age discrimination, Plaintiff must

prove that (i) he was over the age of forty, (ii) his work was

sufficient to meet his employer's legitimate expectations, (iii) his

employer took adverse employment action against him, and (iv) the

Civil No. 98-1233(PG)                                          Page 13

employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. Baralt v. Nationwide Mutual Ins. Co, 251 F.3d 10, 15-16, n. 8 (1st Cir. 2001); Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

Defendant argues that Plaintiff never suffered adverse employment action and therefore cannot make out a prima facie case under the ADEA. In the charge, Plaintiff stated that he was the victim of a hostile work environment. (Mot. for Summ. J. Ex. 1.) An action based on an incident of age-discrimination, or quid pro quo harassment, is legally distinct from a claim of discrimination based on hostile work environment. Defendant's main contention in attacking Plaintiff's allegations at the outset is that, while Plaintiff may be in the appropriate age group, he has never suffered any adverse employment action. Plaintiff argues in his charge before the ADU that Mr. Carlos Barreto "...constantly pressures me and there is a rumor that he (Barreto) is going to make me retire before [sic] time." (Mot. for Summ. J. Ex. 1) In addition, Plaintiff alleged that "...[o]ther elderly employees are being pressured also or have been dismissed and substituted by younger personnel." (Id.) Since Plaintiff's main contention is that he was subjected to a hostile working environment, Defendant errs in alleging that he never suffered adverse employment

Civil No. 98-1233(PG)                                      Page 14

action as a basis for summary judgment. The claims are not equivalent.
Hostile work environment claims are analyzed under a different
standard and are not subject to the McDonnell Douglas standard. See
e.g., Morgan, 122 S.Ct. at 2073 (stating that hostile work environment
claims are different in kind from harassment based on discrete acts).

The definition of a hostile workplace is one "...permeated with
discriminatory intimidation, ridicule, and insult that is sufficiently
severe or pervasive to alter the conditions of the victim's employment
and create an abusive work environment...." Harris v. Forklift
Systems, Inc., 510 U.S. 17, 21 (1993)(internal citations omitted). In
order to be actionable a hostile work environment must alter the
conditions of employment. If specific facts are not adduced to show
that Plaintiff's employment was changed during the relevant time
frame, then the hostile work environment must fail. See generally
Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Meritor Savings
Bank, FSB v. Vinson, 477 U.S. 57 (1986).

In order to determine the severity or pervasiveness of certain
conduct, the Supreme Court has selected the following elements as
meriting special consideration. First, the frequency of the
discriminatory conduct; second, its severity; third, whether it is
physically threatening or humiliating rather than a mere offensive
utterance; and last, whether it unreasonably interferes with an

Civil No. 98-1233(PG)                                    Page 15

employee's work performance. <u>Harris v. Forklift Systems, Inc.</u>, 510
U.S. 17, 23 (1993).

    In <u>Rivera-Rodríguez v. Frito Lay Snacks Caribbean</u>, 265 F.3d 15
(1st Cir. 2001), the First Circuit elaborated on the <u>Harris</u> framework.
After reiterating the hostile work environment standard in <u>Harris</u>,
it went on to hold that "[w]hen assessing whether a workplace is a
hostile environment, courts look to the totality of the
circumstances...." <u>Rivera-Rodríguez</u>, 265 F.3d at 24. In that case, the
appellate court reversed the grant of summary judgment on age
discrimination grounds because Plaintiff had produced enough evidence
that "...a reasonable jury could find that [plaintiff] was subjected
to hostile work environment based on his age." <u>Id.</u> at 25. The
plaintiff produced three specific occasions where plaintiff was
subjected to comments that could be construed as demonstrating age-
based animus. <u>Id.</u> Further, the Court examined other discussions and
concluded that "[o]n six separate occasions, [defendant]...made
seemingly derogatory, age-related statements about Rivera." <u>Id.</u> This
evidence, the Court held, created a question of fact that precluded
the entry of summary judgment.

    In the present case, the Plaintiff first alleges that he was
reassigned within the Maintenance Department to different divisions.
Plaintiff admitted in his deposition that he suffered no adverse

Civil No. 98-1233(PG)                                            Page 16

effects in terms of status within his employment. In fact, Defendant

has provided evidence, and Plaintiff admitted in his deposition, that

these transfers within the department were common practice in

Sealand's Maintenance Department. (Mot. for Summ. J. Ex. 2 at 29.)

In addition, Plaintiff testified that he was not opposed to being

reassigned, along with all the other Maintenance Supervisors, to

different sections. (Id. at 31; see also Mot. for Summ. J. Exs. 3-4

(describing the policy of rotating the supervisors for trouble-

shooting purposes.)) Plaintiff's precise claim was not that the

transfers per se were objectionable, but that Manager Barreto did not

give him enough time to complete the works assigned before he was

transferred again. Plaintiff alleges this was all in effort to force

him to retire.

Second, the Plaintiff claimed that Mr. Barreto offered him a

special assignment and this contributed to the hostile work

environment. Plaintiff rejected the offer of a special assignment and

Plaintiff was not obligated to accept it. Plaintiff alleged that a co-

worker, Mr. Joe Maqueda, had been fired after being offered a special

assignment. (Mot. for Summ. J. Ex. 2 at 24.) However, Plaintiff

acknowledged that the same co-worker had later been offered a better

position within Sealand. (Mot. for Summ. J. Ex. 2 at 53-54.) Plaintiff

felt threatened, subjectively, by this offer of special assignment.

Civil No. 98-1233(PG)                                                    Page 17

(Mot. for Summ. J. Ex. 6)(stating that "...[Mr. Barreto] creat[ed the]

position of special assignments supervisor ...[which]...never existed

...[and] you can eliminate same at any given time and remove that

person from Sea-Land.") Plaintiff's letter responding to the special

assignment opportunity stated that after he was offered the special

assignment and declined it, two other supervisors were interested yet

the shift was never put into effect.

    Third, the Plaintiff received a disciplinary memorandum dated

October 25, 1995. (Mot. for Summ. J. Ex. 5; Ex. 2 at 25.) Plaintiff

admitted that the incidents described in the memorandum were indeed

attributable to him. However, Plaintiff contends that in over thirty

years of working at Sea-Land, he had never received any disciplinary

memorandum. Defendants are correct to point out that corrective

measures are an integral part of any workplace. However, Plaintiff

submits that while the incidents occurred, the letter was a pretextual

act to pressure Plaintiff to resign or retire. As evidence of that,

Plaintiff alleges that he never received a disciplinary memorandum

until that one, that such minor incidents were discussed verbally, and

that Mr. Barreto was attempting to humiliate him into retiring.

    Fourth, the Plaintiff alleges that every time he was assigned to

work with computers, he was assigned the worst and/or slowest

computer. When Mr. Barreto took the position of Maintenance Manager,

Civil No. 98-1233(PG)                                              Page 18

all Maintenance Managers carried their computers with them from
station to station. Defendant alleges that this allegation should not
be used to substantiate Plaintiff's hostile work environment claim
because the position was not administrative or clerical in nature.
This argument seems disingenuous at first blush, given that Defendant
argues that all Maintenance Supervisors received computers. Moreover,
after Plaintiff complained, Defendant changed its policy and installed
the computers in a particular place and employees used whichever was
available in the particular division. (Mot for Summ. J. at 22.)
Plaintiff testified that he believed this change was attributable to
him.

     Fifth, Plaintiff alleges that he was assigned a different car
model once he replaced Mr. Frank Rodríguez, the Maintenance Supervisor
in the Chassis Division. Plaintiff was only authorized to use the car
during working hours. He had been using a Mazda pick-up from time to
time since 1993. In 1998, Mr. Eduardo Vera assigned him to replace Mr.
Rodríguez in the Chassis Division and changed his car from the Mazda
pick-up to an Isuzu Trooper. Defendant alleges that there was a non-
discriminatory reason for the change in car. Defendant alleges that
since Plaintiff was required to carry passengers in his new position,
he was assigned an Isuzu Trooper. (Mot. for Summ. J. at 23.) Plaintiff
testified that he knew Mr. Rodríguez drove the Trooper and not a pick-

Civil No. 98-1233(PG)                                    Page 19

up.

Sixth, Plaintiff alleges that he was subject to a hostile working environment because when salaries were increased for all Maintenance Supervisors, he received a lower percentage increase in his salary. Defendant alleges that notwithstanding this fact, the Plaintiff was still the highest paid supervisor in Sea-Land. (Mot. for Summ. J. at 24.) In addition, Defendant argues that Plaintiff cannot allege a hostile work environment arising from this fact because he was not at a materially significant disadvantage from other similarly situated employees. This argument misses the point of the hostile work environment analysis, which emphasizes a 'totality of the circumstances' approach. See e.g., Rivera-Rodríguez, 265 F.3d at 24. Therefore, no one incident for which the Plaintiff has adduced enough evidence can be discounted. In particular, this failure to raise his salary at the same rate as other supervisors can be probative of a hostile working environment.

Last, the Plaintiff alleges that the former Maintenance Manager, Mr. Barreto, directed several comments at him which he believed were meant to force him to resign. Plaintiff testified at his deposition that the company was offering early retirement, or 'windows' to several employees. (Trabal Dep. at 18.) Plaintiff also testified that Mr. Barreto wanted to bring "new blood" into the organization. (Trabal

Civil No. 98-1233(PG)                                              Page 20

Dep. at 22-23.) In addition, Plaintiff was present when Mr. Barreto

emphasized his desire to bring new, younger people into the workforce.

(Trabal Dep. at 22.) Defendant argues in the Reply that stray remarks

outside the context of an employment decision do not constitute direct

evidence of animus. Shorette v. Rite-Aid of Maine, Inc., 155 F.3d 8,

13 (1st Cir. 1998). Cases that are related directly to age-based

animus, i.e. a comment on gray hair, are more probative of

discrimination. However, the comments coupled with other

circumstantial evidence of age-based discrimination are enough to

defeat a summary judgment motion.

       When all these incidents are taken together, a reasonable jury

could find that Plaintiff was subject to a hostile working environment

that was severe and pervasive enough to alter the conditions of his

employment. Plaintiff worked for Defendant for decades and never had

a problem until Mr. Barreto and Mr. Vera became his supervisors.

Plaintiff's testimony as to the comments Mr. Barreto made, the

disciplinary memorandum, the computer incident and his allegations

that his salary was increased at a slower pace than other supervisors

are sufficient to defeat the motion for summary judgment. Looking at

the totality of the circumstances from Plaintiff's (the nonmovant)

perspective, the Court holds that a genuine issue of material fact

remains as to the hostile work environment. For the reasons stated

Civil No. 98-1233(PG)                                    Page 21

above, the Defendant's Motion for Summary Judgment on the ADEA hostile

working environment claim is **DENIED**.

   2. Constructive Discharge Claim:

   Defendant has argued in the Summary Judgment Motion that

Plaintiff cannot make out a claim for constructive discharge on the

fact alleged. Defendant however, overlooks Plaintiff's allegation in

the complaint that "...[Plaintiff's] age was the decisive factor in

Defendant's [discrimination]...affecting the terms and conditions of

his employment, which actions Plaintiff believes were taken for the

purpose of humiliating him and causing him to resign." (Amended Compl.

¶ 3.5.)

   Defendant argues that Plaintiff has adduced insufficient evidence

to prevail on a constructive discharge claim. Defendant, however,

argues this under the same framework of the quid pro quo harassment,

as opposed to the hostile work environment. Plaintiff has produced

enough evidence to make a colorable claim of hostile work environment.

Plaintiff has also made a colorable claim of constructive discharge

given that, Plaintiff's allegation is that the hostile work

environment forced him to resign after coming back from disability.

   The analysis for evaluating a constructive discharge claim is

"whether the working conditions imposed by the employer had become so

onerous, abusive or unpleasant that a reasonable person in the

Civil No. 98-1233(PG)                                          Page 22

employee's position would have felt compelled to resign." <u>Suárez v.</u>
<u>Pueblo Int'l</u>, 229 F.3d 49, 54 (1st Cir. 2000). The standard is
"...ultimately one of objective reasonableness." <u>Id</u>. However sincere
the subjective beliefs of an employee, that perception will not be
sufficient to succeed on a claim for constructive discharge. <u>Id.</u>

The employee need not prove that the employer engaged in
calculated effort to oust him from his position. Therefore, the
employer's subjective intent is not a factor in the constructive
discharge scenario. <u>Ramos v. Davis & Geck</u>, 167 F.3d 727, 732 (1st Cir.
1999); <u>see also</u> <u>Vega v. Kodak Caribbean Ltd.</u>, 3 F.3d 476, 481 (1st
Cir. 1993).

Plaintiff remained away from his work environment for at least
eight (8) months. (Reply at 4.) The timeliness of a resignation (or
in this case retirement) is essential to stating a claim for
constructive discharge. In <u>Landrau-Romero v. Banco Popular</u>, 212 F.3d
607 (1st Cir. 2000), the Plaintiff resigned seven months after all the
specific events that formed a part of the hostile work environment
claim had occurred. In that particular case, the plaintiff continued
to attend work during the seven months. In the instant case, eight
months elapsed between the time that Plaintiff began taking sick
leave, and the time he retired. Moreover, nearly a year elapsed from
the time of the last incident alleged in the complaint to the date of

Civil No. 98-1233(PG)                                                    Page 23

retirement. Therefore, Plaintiff cannot establish a constructive

discharge claim. Even though enough evidence has been adduced to

defeat summary judgment on the hostile work environment claim, the

temporal connection between Plaintiff's resignation and the alleged

employment acts is too tenuous. The claim for constructive discharge

is **DISMISSED WITH PREJUDICE**.

    3. Retaliation Claims:

    The ADEA also forbids employers from discriminating against

employees who have engaged in action made illegal by the Act. 29

U.S.C. § 623 (d). Plaintiff alleges he was the victim of retaliation

due to his filing of a charge of age-based discrimination against

Defendant, an action made unlawful by the ADEA.

    Plaintiff must make a prima facie showing that (i) he engaged in

ADEA protected activity; (ii) he was thereafter subjected to adverse

employment action and (iii) there was a causal connection between the

protected conduct and the adverse action. Messnick v. General Elec.

Co., 950 F.2d at 827. It is a plaintiff's burden to establish that the

reasons for the adverse employment action were related to the

protected activity. Petitti v. New England Tel. & Tel. Co., 909 F.2d

28, 33 (1st Cir. 1990).

    Plaintiff alleges that the adverse employment action was the

failure to promote him to the Maintenance Manager position after Mr.

Civil No. 98-1233(PG)                                           Page 24

Barreto left Defendant's employ. Said position eventually went to Mr.

Vera. Defendant alleges that the Plaintiff cannot establish a causal

link between the first ADU charge and the failure to promote.

Plaintiff stated in his deposition that he did not know Mr. Vera's

qualifications for the position and he did not know who was

responsible for making the final hiring decisions for Defendant. The

decision to hire Mr. Vera was made by Mr. Paul Colgan, the Operations

Manager.

        Plaintiff's charge was filed in November 1995 and Mr. Vera began

working for Defendant in September 1996. Plaintiff cannot state any

reason, other than not obtaining the promotion, why he believes that

age-based animus was the reason for the personnel action. Mr. Vera was

42 years old when he got the job of Maintenance Manager according to

Plaintiff's own sworn statement. (Mot. for Summ. J. Ex. 8.) While the

age discrepancies between Mr. Vera and Plaintiff are significant, this

evidence alone cannot be probative of age-based retaliation.

        Moreover, the fact that the final decision was made by Mr.

Colgan, and not Mr. Barreto, indicates that Plaintiff's evidence is

all subjective in nature. The Court can find no objective evidence

that Defendant engaged in impermissible retaliation in not promoting

him. Finally, Mr. Colgan, in his declaration in support for

Defendant's Motion for Summary Judgment, stated that the non-

Civil No. 98-1233(PG)                                      Page 25

discriminatory reason he chose Mr. Vera was his prior experience in

managerial positions. (Mot. for Summ. J. Ex. 4.) Plaintiff has not

produced a scintilla of evidence to rebut or contradict this

statement. Instead, Plaintiff has chosen to rely on the evidence

provided above in support of his hostile work environment claim. The

two causes of actions are distinct and require different evidence to

create a genuine issue of material fact to defeat the Motion for

Summary Judgment. Because no reasonably objective jury could find that

Plaintiff was the victim of retaliation, that claim is **DISMISSED WITH**

**PREJUDICE.**

B. Plaintiff's ERISA claim:

Plaintiff's amended complaint (Docket No. 8) details one

allegation under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 et seq. Paragraph 4.4 of the amended

complaint states that "...under...ERISA, Plaintiff is entitled to an

award to satisfy the compensation and value which Plaintiff failed to

gain as a result of Defendant's actions, in Defendant's welfare

benefit plans, stock option plans, and pension plan contributions and

accruals...." (Amended Compl. ¶ 4.4.) The amended complaint yields no

other speck of factual allegation predicated on ERISA.

Defendant argues in its Motion for Summary Judgment that

Plaintiff failed to exhaust administrative remedies for the alleged

Civil No. 98-1233(PG)                                                  Page 26

ERISA claim, and therefore, the Court has no jurisdiction over the claim. (Mot. for Summ. J. at 35-38.) For the reasons stated below, the Defendant's motion is granted as to the ERISA claim, and said claim is **DISMISSED WITHOUT PREJUDICE.**

In Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821 (1st Cir. 1988), the First Circuit held that "ERISA requires employee benefit plans to provide any participant whose claim for benefits is denied with an opportunity for review by the fiduciary denying the claim." Id. at 825. Defendants argue that Plaintiff Trabal never took advantage of procedures implemented to safeguard any benefits that he may have been entitled to.[1] (Mot. for Summ. J. Ex. 9, Lohman Decl. at ¶ 4.) Plaintiff has made no rebuttal to Defendant's argument; in fact, Plaintiff's Opposition is entirely devoid of any allegation referring to ERISA or specifically contradicting Defendant's factual argument.

"ERISA is a comprehensive and reticulated statute which governs the rights and responsibilities of parties in relation to employee pension and welfare plans...." Terry v. Bayer Corp., 145 F.3d 28, 34 (1st Cir. 1998)(quoting Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980)(internal citations omitted)). Its strictures

_____

[1] The Court also has grave doubts that the allegations contained in the amended complaint constitute a cause of action under ERISA. However, since Defendants chose to argue the exhaustion theory the Court will dismiss on that basis.

Civil No. 98-1233(PG)                                                   Page 27

must be complied with, including the requirement that a claimant take advantage of the administrative remedies that may be available to him within the Plan for any contractual claim. <u>Drinkwater</u> at 826. Since Plaintiff has failed to present any material fact to create a genuine issue as to whether or not he ever pursued his ERISA claim in an administrative venue, the cause of action under ERISA is **DISMISSED WITHOUT PREJUDICE.**

<u>C. Ricardo Trabal's claims</u>:

Co-Plaintiff Ricardo Trabal, Plaintiff's son, presses a claim for retaliation in the amended complaint. Defendant argues that this claim is not derivative of his father's claim and therefore, Ricardo Trabal was required to exhaust administrative remedies before an appropriate employment agency. (Mot. for Summ. J. at 32-35.) Co-Plaintiff opposes this and states that his claims are derivative and therefore he is not required to exhaust administrative remedies. (Opp'n at 10.)

Ricardo Trabal never filed a discriminatory charge with the EEOC or ADU. Hiram Trabal's charges mention his family, but do not make any specific reference to any retaliation suffered by his son. The charges allude to damages suffered by his family for the alleged discrimination Hiram Trabal suffered.

The ADEA requires that a Plaintiff exhaust the administrative remedies available to him or her, including claims of retaliation. <u>See</u>

Civil No. 98-1233(PG)                                           Page 28

<u>Johnson v. General Electric</u>, 840 F.2d 132, 139 (1st Cir. 1988). Any

claim made in a complaint that was not brought before the

administrative agency, must be reasonable within the scope of the

agency's investigation. <u>Id.</u> Co-Plaintiff's action is not derivative

of Hiram Trabal's action because it was not adverse employment action

suffered by Hiram Trabal. Ricardo Trabal was required to exhaust

administrative remedies in order to bring a claim of retaliation in

his own right. To the extent the complaint attempts to state a claim

for retaliation in co-Plaintiff Ricardo Trabal's own right, that claim

is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative

remedies.

In <u>Santini-Rivera v. Service Air, Inc.</u>, 137 D.P.R. 1 (1994), the

Supreme Court of Puerto Rico stated that "...[t]he rights of the

relatives, in case as the one under our consideration, constitute an

independent standard that arises separately under Civil Code sec.

1802, in keeping with the general principles of tort liability." <u>Id.</u>

at 4. The First Circuit has also stated that while the 1802 cause of

action is contingent upon the employment discrimination, "the cause

of action is independently founded in the general tort provision...

and not in the anti-discrimination laws." <u>Marcano-Rivera v. Pueblo</u>

<u>Int'l</u>, 232 F.3d 245, 257 fn. 7 (1st Cir. 2000).

Co-Plaintiff is therefore correct if he relies on <u>Santini-Rivera</u>

Civil No. 98-1233(PG)                                                    Page 29

to state a claim for tort damages under Section 1802 of the Civil Code of Puerto Rico. To the extent that Ricardo Trabal is stating a derivative claim under Section 1802 that claim can survive.

However, Defendant argues in its Reply that the cause of action under Article 1802 is time-barred inasmuch as the Plaintiff's discrimination action accrued on November 2, 1995. (Reply at 18.) A cause of action under the general tort statute of Puerto Rico is time-barred after one-year. While the case-law states that the Article 1802 is derivative of the discrimination cause of action, it is also clear that the cause of action, as created in Santini-Rivera, derives from an independent source of law. The discrimination cause of action and the tort cause of action are not identical, and consequently, the charge before the ADU on the discrimination allegations will not toll the Article 1802 cause of action. See Matos-Ortiz, 103 F. Supp. 2d at 62. Therefore, Plaintiff's Ricardo Trabal causes of action for damages incident to the alleged discrimination suffered by Plaintiff Hiram Trabal became time-barred on November 3, 1996. The derivative tort claim of Plaintiff Ricardo Trabal is **DISMISSED WITH PREJUDICE**.

<u>IV. CONCLUSION</u>

For the reasons stated above, the Defendant's Motion for Summary Judgment is **GRANTED in part, DENIED in part**. Defendant's Motion for Summary Judgment on Plaintiff's ADEA hostile work environment claim

Civil No. 98-1233(PG)                                                    Page 30

is **DENIED**. Defendant's Motion for Summary Judgment on Plaintiff's ADEA

constructive discharge claim is **GRANTED**. Defendant's Motion for

Summary Judgment on co-Plaintiff Ricardo Trabal's retaliation claim

is **GRANTED**. Defendant's Motion for Summary Judgment on Plaintiff's

claims under ERISA is **GRANTED**, and those claims are dismissed without

prejudice for failure to exhaust administrative remedies.

   **SO ORDERED**.

   San Juan, Puerto Rico, September _9 th_ , 2002.


                              _____
                              JUAN M. PEREZ-GIMENEZ
                              U.S. District Judge